## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**CHARLES ROBERSON and KAREN ROBERSON, an individual**

      **Plaintiffs,**

**v.**                                **Case No: 5:15-cv-454-Oc-30PRL**

**USAA CASUALTY INSURANCE COMPANY, ARTHUR TYE and NANCY TYE**

      **Defendants.**

---

## REPORT AND RECOMMENDATION[1]

Upon referral, this case is before me for consideration of Plaintiffs' Amended Motion to Compel and/or Motion to Dismiss and/or Motion to Strike Defenses (Doc. 30), to which Defendant USAA Casualty Insurance Co. (USAA) has responded.  (Doc. 32).   On September 22, 2016, pursuant to prior notice, I conducted a hearing regarding this matter and heard argument from counsel.   For the reasons explained below, including that Plaintiffs have failed to establish the existence of the insurance application sought to be compelled, or any prejudice resulting from its unavailability, I recommend that Plaintiffs' motion be denied in all respects.[2]

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.   See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

[2] Also pending before the United States District Judge is USAA's Motion for Summary Judgment (Doc. 31).

## I.      Background

This declaratory judgment action regarding a homeowners insurance contract arises out of an underlying state personal injury action.   Plaintiffs' neighbor, defendant Arthur Tye, was injured by Plaintiffs' bull when it escaped from allegedly inadequate fencing.   As alleged in the Second Amended Complaint, "the bull jumped the fence in order to pursue its own love interests with thoughts of procreation with the neighbor's cow."   (Doc. 24, ¶ 16).   In the ensuing altercation, the "bull attacked [Mr. Tye] numerous times causing bodily injury."   (Doc. 2, p. 85)

Mr. Tye and his wife brought suit against Plaintiffs in the Circuit Court of the Fifth Judicial Circuit of Florida, in the underlying case entitled *Arthur Tye and Nancy Tye v. Randy Skiver, Charles Roberson and Karen Roberson*, Case No. 15 CA 1059.   Plaintiffs allege liability on the part of the Plaintiffs, and claim damages for injuries sustained during the bull altercation. Plaintiffs' homeowners insurer, USAA, reviewed the claim and determined that the loss would not be covered because of an exclusion for losses arising out of a business engaged in by an insured, described by USAA as a standard "business pursuits exclusion."   (Tr. 24, ¶ 4).

In the instant action, Plaintiffs seek a declaratory judgment against USAA, declaring that USAA has a duty to defend them in the underlying state court action.   (Doc. 24, ¶ 9).   Plaintiffs contend that neither they nor their bull were in the course and scope of business at the time of the loss.   (Doc. 24, ¶ 6).   Plaintiffs also allege breach of contract, and seek reimbursement of fees incurred in their defense of the underlying action.   (Doc. 24).   In its summary judgment motion, currently pending before the District Judge, USAA argues that "undisputed record evidence and case law interpreting business pursuits exclusions unequivocally demonstrate the Robersons' cattle operation constitutes a 'business' under the terms of the USAA Policy," and that it is entitled to

summary judgment and a declaratory judgment that it has no duty of indemnity with respect to the Tye's underlying personal injury claim.   (Doc. 31, p. 3).   USAA argues that the Plaintiffs were raising and selling beef cattle on 45 acres of land approximately one to two miles from their personal residence, and that they owned between 35-45 cattle at any one time.   (Doc. 32, p. 8).   USAA also claims discovery has established that Mr. Roberson viewed the cattle operation as a full time job, and that they treated it as a business for tax purposes – indeed, they filed a "Schedule F" with their IRS form 1040 deducting losses from their farming operation.   (Doc. 32, p. 8).

## II.    Plaintiffs' Motion to Compel, Dismiss or Strike Defenses

Turning to the motion that is currently before me, Plaintiffs requested, through discovery, "A true and correct copy of any applications or agreements for the issuance of insurance to Petitioners by USAA in writing or underwriting insurance coverage for their property," and complain that it was not produced.   (Doc. 30, ¶ 7).   Indeed, USAA responded to the request and stated that such an application either never existed or has been destroyed as part of their normal course of business:

> The initial homeowners policy was issued to the Robersons in 2005. USAA has a policy of only keeping documents like application related materials and related documents for seven years and then they are discarded/deleted. Thus, USAA has no application or application related documents. Further, in 2005 almost all applications were done over the phone, and no specific written application was prepared.
> .

(Doc. 32, p. 2).

There is no dispute that the application cannot be produced, if it ever even existed.   It is also undisputed that the subject insurance contract was actually a renewal of an original contract that was issued in 2005, and had been automatically renewed for several years.   Thus, no application existed for the subject contract (again, which was a renewal), and any original application, if it existed at

all, would have been submitted in 2005.   Further, both parties apparently agree that no formal or written application exists, as USAA's policy was and is to take information over the telephone. (Doc. 32, p. 2).   USAA represents (and Plaintiffs do not dispute) that the application related information that would exist dating to the Plaintiffs' 2005 original contract would be computer notes from a telephone conversation.   Further, USAA represents that any such information is no longer available, because it would have been routinely deleted or destroyed after seven years.   (Doc. 32, p. 9).

Meanwhile, Plaintiffs contend they are entitled to harsh sanctions against USAA due to its inability to produce the alleged application, including dismissal or striking of its defenses and an award of coverage in Plaintiffs' favor.   Plaintiffs' rather tenuous argument relies on their interpretation of Florida law.   Specifically, Plaintiffs cite Fla. Stat. § 627.408(2):

> After reinstatement or renewal of a policy of insurance delivered or issued for delivery in this state, the insured may, in writing, request from the insurer a copy of the original application, or the application for renewal or reinstatement, if any. The insured or the beneficiary or assignee of a life or health insurance policy may request the application.   Within thirty (30) days after receiving the request, the insurer must deliver or mail a legible copy of the application to the person requesting it . . .

Relying on this section, Plaintiffs contend that USAA had an affirmative duty under Florida law both to use and to indefinitely maintain formal applications.   Aside from the statute itself, Plaintiffs cite no authority in support of this conclusion.   Indeed, Plaintiff concedes there is no Florida law holding that an insurance company must have a formal application before issuing an insurance contract.   And the plain language of the statute does <u>not</u> contain the requirement that Plaintiffs would otherwise read into it.

Plaintiffs also cite a Florida Supreme Court decision, *Matthews v. Ranger Insurance Company*, 281 So.2d 345 (1973), for the proposition that the insurance application becomes part of

the agreement, and along with the policy, and forms the contract of insurance.   The court stated, "[w]e have held that a single insurance policy provision should not be considered in isolation, but should be construed with other policy provisions against the background of the case."   *Matthews*, citing *Praetorians v. Fisher*, 89 So.2d 329 (Fla. 1956).   Plaintiffs also cite *Quick v. National Indemnity Co*., 231 So.2d 22, 25 (Fla. 4th DCA 1970) for the proposition that policies must be liberally construed in favor of the policyholder whenever possible and strictly construed against the insurer in order to afford the protection the insured was endeavoring to secure when he applied for the insurance.

Plaintiffs thus contend that, somehow, the interplay between the law established in *Matthews* and *Quick* and the requirements of § 627.408(2) results in a duty on the part of USAA to produce a copy of the insurance application or, if they cannot, the Court should strike all its defenses and award coverage to Plaintiffs.   Plaintiffs cite no authority supporting the proposition that Florida case law and § 627.408(2) have ever been interpreted in such a way, or that the sanctions requested would be appropriate in the instant case on that basis.   Notably, *Matthews* was decided in 1973, providing the Florida courts an ample opportunity to develop the law; thus the absence of any authority supporting Plaintiffs' argument is telling.

Meanwhile, Defendant USAA has submitted a well-reasoned and well-supported response arguing that Plaintiffs' motion must be denied.   (Doc. 32).   They argue that the motion to compel must be denied because they have already answered the request, and the application cannot be produced.   Further, USAA argues that, even if there was a policy application in 2005 when Plaintiffs would have applied, USAA would have deleted that application approximately 3 years before the underlying personal injury lawsuit was filed, and before this insurance coverage litigation was filed.

The undersigned agrees that Plaintiffs' motion is due to be denied in all respects.  First, Plaintiffs have failed to show that USAA had a duty to take a written application and maintain such an application indefinitely.  Although Plaintiffs contend § 627.408(2) creates such a duty, the statute merely refers to "a copy of the original application, or the application for renewal or reinstatement, if any."   Plaintiffs concede no Florida case holds that insurance companies must use formal applications before issuing insurance.   Indeed, Defendant maintains that no such requirement exists, and if the Florida Legislature desired such a requirement, it knows how to craft statutory language accordingly.  By way of comparison, Defendant cites the Florida Uninsured Motorist's Statute, Fla. Stat. § 627.727, which contains detailed guidance to insurance companies and requires an approved rejection form with precise language.[3]

Second, Plaintiffs have failed to show that an application actually existed in this case. Plaintiffs' counsel conceded his clients have no recollection of any application or its contents. Meanwhile, USAA undisputedly represents that, at the relevant time, all information from

---

[3] Section 627.727(1), Florida's UM statute, states in pertinent part, as follows:

... Unless an insured, ... having the privilege or rejecting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured ... had rejected the coverage.... The rejection or selection of lower limits shall be made on a form approved by this office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12–point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family and you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section....

applicants would have been taken over the phone.   USAA represents that any resulting computer notes would have been routinely deleted or destroyed after seven years under standard company policy.

Third, and most importantly, Plaintiffs have failed to show any prejudice resulting from USAA's inability to produce the application.   There is no evidence, such as testimony from Plaintiffs that they affirmatively sought coverage for farm or cattle activities, and that the application would include evidence of what they were endeavoring to insure.   There is nothing, beyond Plaintiffs' speculation, to suggest that the application, even if it existed, could impact the coverage issues in this case.   Likewise, Plaintiffs failed to identify any case holding that the contents of the application could change the application of the business pursuits exclusion.

Unlike *Matthews*, this case does not involve an allegation that there are conflicting provisions within the insurance policy, and consideration of the application would assist the court in construing the policy.   In *Matthews*, the court reviewed an insurance contract that contained provisions that were incongruous when read with the other terms of the contract.   281 So.2d 345, 349.   The court found that the background of the case, including the application for liability insurance coverage contained no ambiguity or problems of construction or interpretation regarding the coverage sought by the insured, specifically coverage for student instruction of church members aboard a church-owned aircraft.   *Id.* at 348.   When a student trainee died in a plane crash aboard the aircraft, a dispute arose over whether the loss was covered under the insurance policy.   *Id.*   The dispute arose due to "a single exclusionary provision buried amidst three pages of 'Exclusions,' "Definitions,' and 'Conditions' contained in the insurance policy," which purported to exclude coverage.   *Id.* at 349.   The Florida Supreme Court did not agree that the single exclusionary provision controlled, observing that "[e]very relevant statement in the application and the policy,

except that single fine-print exclusion, is aimed at providing insurance coverage for church member taking flying instructions." *Id.* Thus, *Matthews* demonstrates how consideration of the application can assist the court in construing the policy when incongruous provisions render the contract ambiguous. *Id.*

Here, Plaintiffs argue that the insurance contract is ambiguous because it fails to explain whether the business pursuits exclusions apply to hobby cattle operations. Importantly, Plaintiffs do not contend that there are incongruous provisions within the insurance policy itself. Thus, this case is easily distinguished from *Matthews* because the insurance contract does not present multiple, potentially inconsistent, provisions that render the entire agreement ambiguous. To the contrary, USAA contends the contract contains standard business pursuits exclusions that have been uniformly upheld by Florida courts. Plaintiffs do not dispute that the contract itself, including the exclusion provisions, are internally consistent. The significance of this distinction is that there is no incongruity between provisions to be addressed by the court, and for which consideration of the application would be relevant.

Further, to expand on the hypothetical example offered by Plaintiffs at the hearing, even if the application had been titled "Application for Cattle Operation Insurance," or revealed other evidence that Plaintiffs sought to insure their cattle operation, the result would not change. Generally, the rule is that, in granting weight to the provisions of an application for insurance, the provisions of the policy govern where there is a conflict. *See Quick v. National Indemnity Company*, 231 So.2d 22 (Fla. 4th DCA 1970).

Plaintiffs offer nothing beyond mere speculation about what the application, if it had even existed, might have included. Plaintiffs merely argue that the unavailability of the application renders them unable to see the entire contract, and that "[i]t would be beneficial to know if the

original application addressed whether or not there were cattle being raised by the Robersons," and that it is "impossible" for them to know whether there is additional information which "might" be beneficial to their case."   (Doc. 30, p. 5).   In response, USAA contends that "[i]rrespective of what information Plaintiffs may have included on any application, or what type of coverage they requested, a homeowners policy containing a business pursuits exclusion was issued to Plaintiffs by USAA."   (Doc. 32).   USAA contends that the contents of the application are irrelevant to the actual facts of this case regarding whether the cattle operation was a "business" for the purposes of the business pursuits exclusion.   In any event, Plaintiffs have not established that there were provisions in the application which might result in greater indemnity.   Simply put, Plaintiffs have made no showing that USAA's inability to produce the application has caused prejudice.

Finally, Plaintiffs have also failed to meet their burden of showing that any sanctions are warranted under Fed. R. Civ. P. 37(e) or common law regarding spoliation.   Not only is there no evidence that the application ever existed, but there is certainly no evidence that USAA intended to deprive Plaintiffs of the information, or otherwise acted in bad faith.   Even if the other spoliation elements are met, "[a] party's failure to preserve evidence" rises to the level of sanctionable spoliation in this circuit "only when the absence of that evidence is predicated on bad faith," such as where a party purposely "tamper[s] with the evidence."   *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997).

### III.     Recommendation

For the reasons stated above, it is respectfully recommended that Plaintiffs' Amended Motion to Compel and/or Motion to Dismiss and/or Strike Defenses (Doc. 30) be denied in all respects.

Recommended in Ocala, Florida on September 22, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy